UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDRE LEVESQUE,

                          Plaintiff,

                                                    5:15-CV-00914
v.                                                  (FJS/TWD)

MAGISTRATE PEEBLES, et al.,

                          Defendants.
_____

APPEARANCES:

ANDRE LEVESQUE
Plaintiff *pro se*
Northwest State Correctional Facility
Inmate 12857
3649 Lower Newton Road
Swanton, Vermont  05488

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

Presently before the Court is a complaint brought by *pro se* Plaintiff Andre Levesque against Defendants United States Magistrate Judge David E. Peebles, United States Magistrate Judge Christian F. Hummel, United States District Court Judge David N. Hurd, and New York State Supreme Court Justice Robert J. Muller.  (Dkt. No. 1.)  Plaintiff has not paid the statutory filing fee, and, instead, has filed an Application to proceed *in forma pauperis* ("IFP Application") and an Inmate Authorization Form.  (Dkt. Nos. 3 & 4.)  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 (2006).  For the reasons discussed below, Plaintiff's motion to

proceed *in forma pauperis* is denied pursuant to 28 U.S.C. § 1915(g), and the Court recommends dismissing this action in its entirety with prejudice pursuant to 28 U.S.C. § 1915A(b).

## I.      ALLEGATIONS OF THE COMPLAINT

Each of the named Defendants are judges.  (Dkt. No. 1 at 1.)  Plaintiff alleges that Defendants violated his right to due process and equal protection of the law, and have added to his "distress and the irrepritable [sic] harm" suffered during several judicial proceedings by failing to appoint an attorney, failing to issue restraining orders, dismissing cases, and denying him a trial.  *Id.* at 2-3.  Plaintiff seeks substantial monetary relief.  *Id.* at 5.

Plaintiff claims all Defendants "are out of touch to the reality of the serious human rights violations causing immence [sic] distress and irrepritable [sic] harm . . . ."  *Id.* at 4.  Plaintiff alleges Defendants have been "biased and discriminating, and failed to follow proper procedure, . . . ."  *Id.*  Plaintiff claims that "[a]ll they have done is abuse me for thei [sic] personal gfains [sic] and . . . . have ignored me, . . . .  *Id.*  Plaintiff alleges that Judge Muller "has participated by dismissing my claim" in New York State Supreme Court, based on what Judge Peebles, Judge Hummel, and Judge Hurd "have written, effectively denying me due process, and equal protection of the law."  *Id.*  Plaintiff alleges Defendants "gave up their immunity and the owner of the dogs so to speak are lyabble [sic] to . . . ."  *Id.*

## II.      IN FORMA PAUPERIS APPLICATION

A court may grant *in forma pauperis* status if a party is "unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  Plaintiff declares he is incarcerated and he is unable to pay the filing fee.  (Dkt. Nos. 3 & 4.)  Therefore, for purposes of this Report and Recommendation, the Court finds that Plaintiff meets the economic criteria for proceeding *in forma pauperis* solely for purposes of initial review.

Nevertheless, the Court must also determine whether 28 U.S.C. § 1915(g) bars Plaintiff from proceeding *in forma pauperis* and without prepayment of the filing fee. Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

### A. Determination of Three-Strikes

Previously, a court in this District denied Plaintiff's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(g) "because at least three of plaintiff's previous complaints were dismissed as frivolous and/or for failure to state a claim upon which relief could be granted." *Levesque v. State Farm Ins.*, No. 8:13-CV-0346, 2013 WL 2237827, at *2, 2013 U.S. Dist. LEXIS 71411, at *2 (N.D.N.Y. May 21, 2003).[1] The Court takes judicial notice of this ruling, and after reviewing the cases cited therein, similarly determines that Plaintiff has indeed acquired three or more strikes prior to commencing this action on July 17, 2015.[2] Thus, unless it appears that the imminent danger exception to the three-strikes rule is applicable in this action, Plaintiff may not proceed *in forma pauperis*.

---

[1] The Court will provide Plaintiff with copies of unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76, 76 (2d Cir. 2009) (per curium).

[2] A court performing a "three-strikes" analysis must determine the date on which the plaintiff "brought" the action for purposes of 28 U.S.C. § 1915(g). Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumably to be the date that the complaint was signed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). Here, Plaintiff signed his complaint on July 17, 2015. (Dkt. No. 1 at 5.) Therefore, the Court will presume that Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g) on July 17, 2015.

## B. The Imminent Danger Exception

Congress enacted the imminent danger exception contained in the final phrase of § 1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred from proceeding *in forma pauperis. Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002). "[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citation omitted); *see also Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007) (imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged). "The exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." *Nelson v. Spitzer*, No. 07-CV-1241, 2008 WL 268215, at *1 n.4, 2008 U.S. Dist. LEXIS 6494, at *3 n.4 (N.D.N.Y. Jan. 29, 2008) (citation omitted).

In addition, "§ 1915(g) allows a three-strikes litigant to proceed [*in forma pauperis*] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id*. at 298-99.

"When determining whether a prisoner has qualified for the 'imminent danger' exception courts look at the non-conclusory allegations in the plaintiff's complaint." *Welch v. Charlan*, No. 9:06-CV-0061, 2008 WL 5382353, at *1 n.2, 2008 U.S. Dist. LEXIS 101919, *3 n.2

(N.D.N.Y. Dec. 16, 2008). Where the plaintiff is proceeding *pro se*, his complaint should be liberally construed and interpreted to "raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 618 F.3d 162, 170 (2d Cir. 2010). "[T]hough [a court] is obligated to draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [the court] cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Thus, "[a] court may find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.'" *Id.* (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)).

Plaintiff has filed this civil rights action alleging that Defendants have denied him due process and equal protection of the law, causing him to suffer "immence" [sic] distress, "irrepritable" [sic] harm, and "overwhelming" pain and suffering. (Dkt. No. 1 at 2.) Even construing his complaint with the leniency that the Court must afford a *pro se* litigant, *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996), these allegations present no basis for this Court to find that Plaintiff was under imminent danger of serious physical injury at the time that he filed his complaint, and the relief sought, "1 BILLION DOLLARS US FUNDS" would redress no physical injury. (Dkt. No. 1 at 5.) Therefore, the imminent danger exception does not apply to Plaintiff's case and the IFP Application is denied pursuant to 28 U.S.C. § 1915(g).

Generally, when the court denies a plaintiff *in forma pauperis* status because that litigant has accumulated three-strikes under § 1915(g), the plaintiff would be given the opportunity to pay the filing fee in full or risk dismissal of the action. *See Ortiz v. McBride*, 380 F.3d 649, 659 n.7 (2d Cir. 2004). However, a review of the merits of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A(b), shows that the Court need not give Plaintiff this option because the action is

clearly frivolous, fails to state a claim, and seeks monetary relief from Defendants who are immune from such relief and would be dismissed outright even if Plaintiff paid the filing fee.[3]

## III.  LEGAL STANDARD FOR REIVEW OF THE COMPLAINT

Pursuant to 28 U.S.C. § 1915A(b), a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employees of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 29 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding § 1915A applies to all actions brought by prisoners against government officials regardless of whether prisoner proceeded *in forma pauperis* or paid the filing fee).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

---

[3] Even if Plaintiff was not barred by the three-strikes rule from proceeding *in forma pauperis*, this Court would still recommend dismissal of this action with prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(A) and 1915(e). When a plaintiff seeks to proceed *in forma pauperis*, 28 U.S.C. § 1915(e) requires that "the court shall dismiss the case at any time if the court determines that . . . the action . . .(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both §§ 1915 and 1915A are available to evaluate prisoner *pro se* complaints).

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous); *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV. ANALYSIS

Plaintiff's complaint is barred by the doctrine of judicial immunity. Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "'at liberty to exercise their functions with independence and without fear of consequences.'" *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2005) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson*, 386 U.S. at 553-554). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11. A judge cannot "be deprived of immunity because the action he took was in error . . . or was in excess of authority." *Id*. at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). "A complaint will be dismissed as 'frivolous' when 'it is

clear that the defendants are immune from suit.'" *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curium) (quoting *Neitzke*, 490 U.S. at 327).

In the present action, Plaintiff's claims against Judge Peebles, Judge Hummel, Judge Hurd, and Judge Muller arise from the exercise of their judicial functions. (Dkt. No. 1.) Judges are immune from damages for civil liability for acts taken in their judicial capacity. *Stump*, 435 U.S. at 356. Plaintiffs' allegations clearly fail to implicate either of the exceptions to judicial immunity. (Dkt. No. 1.) Even the most liberal reading of Plaintiff's complaint shows that it is frivolous, fails to state a claim upon which relief may be granted, and seeks monetary relief from Defendants that are immune from such relief. Therefore, the Court recommends that the complaint be dismissed pursuant to 28 U.S.C. § 1915A(b).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco*, 222 F.3d at 112 (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted). Here, better pleading would not cure the defect with Plaintiff's complaint. Therefore, the Court recommends dismissing the complaint with prejudice pursuant to 28 U.S.C. § 1915A(b).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 3) is **DENIED** pursuant to 28 U.S.C. § 1915(g); and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with copies of all unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: October 13, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2013 WL 2237827
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Andre LEVESQUE, Plaintiff,

v.

STATE FARM INSURANCE; and
New York State Police, Defendants.

No. 8:13–CV–0346 (LEK/RFT).   |   May 21, 2013.

**Attorneys and Law Firms**

Andre Levesque, Plattsburgh, NY, pro se.

### ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–Recommendation filed on April 24, 2013, by the Honorable Randolph F. Treece, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(d). Dkt. No. 5 ("Report–Recommendation").

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b); N.D.N.Y. L.R. 72.1(c). "If no objections are filed ... reviewing courts should review a report and recommendation for clear error." *Edwards v. Fischer,* 414 F.Supp.2d 342, 346–47 (S.D.N.Y.2006); *see also Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."); *Farid v. Bouey,* 554 F.Supp.2d 301, 306 (N.D.N.Y.2008).

No objections to the Report–Recommendation were filed in the allotted time period. After a thorough review of the Report–Recommendation and the record, the Court has determined that the Report–Recommendation is not subject to attack for clear error or manifest injustice.

Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 5) is **APPROVED** and **ADOPTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's Motion (Dkt. No. 3) for leave to proceed *in forma pauperis* is **DENIED** for the reasons set forth in the Report–Recommendation (Dkt. No. 5); and it is further

**ORDERED,** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** for the reasons set forth in the Report–Recommendation (Dkt. No. 5); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order upon the parties to this action.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate Judge.

Presently before the Court is a Complaint brought by *pro se* Plaintiff Andre Levesque. Dkt. No. 1, Compl. Plaintiff, who is currently incarcerated in Clinton County Jail, has not paid the statutory filing fee and, instead, has filed an Application to Proceed *In Forma Pauperis* ("IFP") and an Inmate Authorization Form. Dkt. Nos. 3 & 4. For the reasons set forth below, Plaintiff's Motion to Proceed *In Forma Pauperis* is **denied** pursuant to 28 U.S.C. § 1915(g) and we recommend *sua sponte* dismissing this action for lack of subject matter jurisdiction.

### I. DISCUSSION

#### A. IFP Application

##### *1. Three Strikes Provision*

Where a plaintiff seeks leave to proceed *in forma pauperis,* the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the $350.00 filing fee. Notwithstanding Plaintiff's statement in the cover letter accompanying his Complaint indicating that he would "have no trouble paying" the filing fee (Dkt. No. 1–1), after reviewing the

IFP Application, including the certification provided by the Clinton County Sheriff's Department, the Court finds for purposes of this Report–Recommendation and Order that Plaintiff currently meets the economic criteria for commencing this action without prepayment of fees. 28 U.S.C. § 1915(a).

**\*2** Nevertheless, the Court must also determine whether the three strikes provision of 28 U.S.C. § 1915(g) bars Plaintiff from proceeding *in forma pauperis* and without prepayment of the filing fee. Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The Court notes that in a prior action initiated by Plaintiff in this Court, it was determined that Levesque had accumulated more than three strikes for purposes of 28 U.S.C. § 1915(g) "because at least three of plaintiff's previous complaints were dismissed as frivolous and/or for failure to state a claim upon which relief could be granted." *Levesque v. United States Gov't,* Civ. No. 9:12–CV–796 (NAM/DEP) (N.D.N.Y.), Dkt. No. 8, Dec. & Order, dated July 30, 2012, at p. 4 (citing various cases wherein Levesque accumulated three strikes prior to initiating the civil action in the Northern District of New York on May 5, 2012).[1] The undersigned takes judicial notice of this ruling by the Honorable Norman A. Mordue, United States District Judge, and similarly determines, based upon our review of the cited cases, that Plaintiff has indeed acquired three or more strikes prior to bringing this current action on March 23, 2013.[2] Thus, unless it appears that the imminent danger exception to the three strikes rule is applicable in this action, Plaintiff may not proceed with this action *in forma pauperis.*

### 2. Imminent Danger Exception

Congress enacted the imminent danger exception contained in the final phrase of § 1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred from proceeding *in forma pauperis. Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002). "[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint—in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau,* 554 F.3d 293, 296 (2d Cir.2009) (citation omitted); *see also Polanco v. Hopkins,* 510 F.3d 152 (2d Cir.2007) (imminent danger claims must be evaluated at the time the complaint is filed, rather at the time of the events alleged).

In addition, " § 1915(g) allows a three-strikes litigant to proceed [*in forma pauperis* ] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus v. Morgenthau,* 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298–99.

**\*3** "When determining whether a prisoner has qualified for the 'imminent danger' exception, courts look at the non-conclusory allegations in the plaintiff's complaint." *Welch v. Charlan,* 2008 WL 5382353, at \*1, n. 2 (N.D.N.Y. Dec. 16, 2008). Where the plaintiff is proceeding *pro se,* his complaint should be liberally construed and interpreted "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir.2010) (internal quotation marks omitted). "[T]hough [a court] is obligated to draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [the court] cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010). Thus, "[a] court may find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.' " *Id.* (quoting *Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir.2003)).

Construing Plaintiff's Complaint with extreme liberality, Plaintiff alleges that in 2012, unspecified items were stolen

from a civilian residence and Defendant State Farm Insurance has failed to process his claim and Defendant Police have failed to address same. *See generally* Compl. He claims that there is a "treasonistic cover up going on" wherein he was charged with some unspecified crime and "being threatened harassed assaulted and now robbed, and now insulted etc. etc. etc."*Id.* at ¶ 9. Plaintiff provides no facts regarding threats posed against him in 2013. Thus, even construing his Complaint with the leniency that the Court must afford a *pro se* litigant, *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996), these allegations present no basis for this Court to find that Plaintiff was under imminent danger of serious physical injury at the time that he filed his Complaint in March 2013. Therefore, the imminent-danger exception does not apply to this case and his IFP Application is **denied.**

Generally, when the Court denies a plaintiff IFP status because that litigant had accumulated three strikes under Section 1915(g), the plaintiff would be given the opportunity to pay the $350.00 filing fee in full or risk dismissal of the action. However, a review of the Complaint shows that the Court does not have the subject matter jurisdiction to entertain this action, thus, dismissal is warranted.

## B. Review of the Complaint

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its own jurisdiction, thus, we must examine whether diversity jurisdiction exists. *City of Kenosha, Wisconsin v. Bruno,* 412 U .S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte* ). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin,* 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

**\*4** Moreover, under 28 U.S.C. § 1915A, a court must, as soon as practicable, *sua sponte* review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employees of a governmental agency" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who

is immune from such relief."28 U.S.C. §§ 1915A(a) & (b); *see also Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir.1999) (*per curiam* ).

As noted above, Plaintiff appears to be complaining about a theft that occurred in 2012 while he presumably resided at a civilian address. Compl. at ¶ 3. He does not provide the date on which this theft is alleged to have occurred. He generally claims that items were stolen and that State Farm has failed to process a claim he filed, possibly pursuant to a renter's insurance policy. *Id.* at ¶¶ 4, 5, 7, & 11.He also asserts, though not in clear terms, that the Defendant Police came to his home but, despite being provided a list of stolen items, they have failed to address his claim of theft. *Id.* at ¶¶ 3, 6, & 10.Plaintiff alleges that the failure of the Defendants to adequately address his claims has caused him to suffer emotional distress and he seeks compensation in the amount of twenty million dollars. *Id.* at ¶¶ 7 & 12.

Plaintiff's Complaint does not contain a basis for this Court's jurisdiction. But, on the Civil Cover Sheet (Dkt. No. 1–3) accompanying the Complaint, Plaintiff claims that the jurisdictional basis for his action is federal question, which would fall under 28 U.S.C. § 1331, the statue which sets forth this Court's federal question jurisdiction. However, under the section denoting "Nature of Suit," Plaintiff indicates that this is an insurance contract dispute for refusal to process his claims. Yet, no where in any of Plaintiff's submissions does he directly or indirectly invoke any federal constitutional provision, law, or treaty that supports the allegations in the Complaint, and this Court cannot surmise any based upon what has been pled. Therefore, it is patent that no subject matter jurisdiction would exist based upon this Court's federal question jurisdiction.

Nevertheless, in light of his *pro se* status, we consider whether the Court has subject matter jurisdiction under 28 U.S.C. § 1332, the statute conferring diversity jurisdiction. For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

**\*5** 28 U.S.C. § 1332(a).

For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: "(1) physical presence in a state and (2) the intent to make the state a home." *See Zimak Co. v. Kaplan,* 1999 WL 38256, at \*2 (S.D.N.Y. Jan. 28, 1999) (quoting 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 102.34[2] (3d ed.1998)). Corporations are deemed to be "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business [.]" 28 U.S.C. § 1332(c).

In the "Parties" section of the Complaint, Plaintiff provides a Plattsburgh, New York address for himself. [3] For Defendant State Farm, Plaintiff lists a Plattsburgh, New York address, and for Defendant New York State Police, Plaintiff lists a Chazy, New York address. Plaintiff does not list State Farm's principle place of business nor place of incorporation. It seems that Plaintiff's Complaint against State Farm is due to its failure to process his claim of stolen goods. He does not provide a list of the items stolen nor their worth. Notwithstanding Plaintiff's claim of emotional distress, Plaintiff's cause of action sounds in breach of contract, which limits his potential compensation to the amount that would make him whole. Without a list of the value of the items stolen, or for that matter, an allegation that he was insured by State Farm and that they were obligated by a contract to process his claim, Plaintiff has failed to allege that the amount in controversy exceeds $75,000 as required by the statute. Because of these identified deficiencies, we find that he has also failed to state a cognizable claim against State Farm. As for Defendant Police, while diversity is clearly lacking,

Plaintiff also fails to state a cognizable cause of action against this Defendant implicating them in any wrongdoing.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED,** that Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Dkt. No. 3) is **denied** due to Plaintiff's accumulation of three strikes prior to bringing this action and because he has not shown that at the time he brought this action he was in imminent danger; and it is further

**RECOMMENDED,** that this entire action be *sua sponte* dismissed due to lack of subject matter jurisdiction and because Plaintiff fails to state a claim upon which relief could be granted; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

## All Citations

Not Reported in F.Supp.2d, 2013 WL 2237827

---

Footnotes

1    All of Plaintiff's "strikes" were accumulated in the District of New Hampshire. *See Levesque v. United States Gov't,* Civ. No. 9:12–CV–796 (NAM/DEP) (N.D.N.Y.), Dkt. No. 8, Dec. & Order, dated July 30, 2012, at pp. 4–6.

2    A court performing a "three strikes" analysis must determine the date on which the plaintiff "brought" the action for purposes of 28 U.S.C. § 1915(g). Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed. *See Houston v. Lack,* 487 U.S. 266, 276 (1988); *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001). Here, Plaintiff signed his Complaint on March 23, 2013, therefore the Court will presume that Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g) on March 23, 2013.

3    Levesque is currently incarcerated at Clinton County Correctional Facility.

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 268215
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Dennis NELSON, Plaintiff,

v.

Eliot SPITZER; David Rock, Superintendent,
Great Meadow Correctional Facility; P. Brady,
Correctional Officer, Great Meadow Correctional
Facility, Brian Fischer; Richard Potter; J.
Gumlaw; M. Cleveland; et al., Defendants.

No. 9:07-CV-1241 (TJM)(RFT).  |  Jan. 29, 2008.

**Attorneys and Law Firms**

Dennis Nelson [1], Comstock, NY, pro se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. Background.**

 **\*1** Presently before the Court is complaint, together with
an *in forma pauperis* application, filed by plaintiff Dennis
Nelson, who is presently incarcerated at the Great Meadow
Correctional Facility. Dkt. No. 1. Plaintiff also requests
injunctive relief. Dkt. No. 4.

As is more fully discussed below, plaintiff must pay the
$350.00 filing fee in full, and submit an amended complaint,
before this action may be permitted to proceed.

**II. Discussion.**

**A.** *In forma pauperis* **application**

Section 1915(e) directs that, when a plaintiff seeks to proceed
*in forma pauperis*, "(2) ... the court shall dismiss the case
at any time if the court determines that-... (B) the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B)." [2] Thus, the court has a responsibility
to determine that a complaint may be properly maintained in
this district before it may permit a plaintiff to proceed with

an action *in forma pauperis*. [3] *See id.* Although the court has
the duty to show liberality towards *pro se* litigants, *Nance
v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and
extreme caution should be exercised in ordering *sua sponte*
dismissal of a pro se complaint before the adverse party
has been served and the parties have had an opportunity
to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d
Cir.1983), there is a responsibility on the court to determine
that a claim is not frivolous before permitting a plaintiff to
proceed with an action *in forma pauperis. See e.g. Thomas v.
Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding
that a district court has the power to dismiss a complaint *sua
sponte* if the complaint is frivolous).

In the present case, the Court finds that plaintiff's financial
status would qualify him to file or "commence" this action
without prepaying in full the filing fee. However, 28 U.S.C.
§ 1915(g), as amended, provides:

> In *no event* shall a prisoner bring a
> civil action or appeal a judgment in a
> civil action or proceeding under this
> section if the prisoner has, on 3 or more
> prior occasions, while incarcerated
> or detained in any facility, brought
> an action or appeal in a court of
> the United States that was dismissed
> on the grounds that it is frivolous,
> malicious, or fails to state a claim upon
> which relief may be granted, unless the
> prisoner is under imminent danger of
> serious physical injury. [4]

28 U.S.C. § 1915(g) (emphasis added). Accordingly, the
Court has a responsibility to determine that a plaintiff has not
brought actions, on three or more occasions, which have been
dismissed as frivolous, malicious or for failure to state a claim
before permitting that plaintiff to proceed with an action *in
forma pauperis. Id.*

A review of plaintiff's prior proceedings reveals that plaintiff
does have three "strikes" and, thus, should not be permitted to
proceed with this action *in forma pauperis. See Nelson v. Lee,*
9:05-CV-1096 (DEP)(NAM), Dkt. Nos. 44 and 47; *Nelson v.
Hamel,* 9:07-CV-540 (GLS)(RFT), Dkt. No. 4; and *Nelson v.
Conway,* No. 04-CV-6163CJS(Fe) (W.D.N.Y. Apr. 21, 2004)
(Defendants' Motion (Dkt. No. 40) Ex. B). This Court has
reviewed, and concurs with, the findings of Chief District
Judge Mordue, District Judges Sharpe and Siragusa, and

Magistrate Judge Peebles, with respect to the prior actions filed by this plaintiff and dismissed by the federal courts, as detailed in the aforesaid cases.[5]

**\*2** Further, the Court has reviewed the complaint to determine whether plaintiff is under an imminent danger of serious physical injury. In his complaint, plaintiff alleges that staff at Great Meadow Correctional Facility are threatening to harm plaintiff if he tries to leave his cell for medical appointments to treat gangrene in his lower left leg.[6] Dkt. No. 1 at 5-6.Plaintiff has previously filed allegations regarding this injury, claiming denial of adequate medical treatment and alleging potential amputation of his left leg. *See Nelson v. Lee,* 9:05-CV-1096; *Nelson v. Nesmith,* 9:06-CV-1177;[7] *Nelson v. Conway,* No. 04-CV-6163CJS(Fe) (W.D.N.Y. Apr. 21, 2004). After reviewing the allegations contained in plaintiff's present complaint, the court concludes that plaintiff's claims do not fall within the "imminent danger" exception.

### B. Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.*German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J .) (§ 1983"is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.") (citation omitted). Parties may not be held liable under § 1983 unless it can be established that they have acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* No. 92-CV-4288, 1992 WL 380914 (S.D.N.Y., Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* No. 95-CV-1500, 1995 WL 743719, \*2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994)) (McAvoy, C.J.) (citation omitted))."It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)) (other citations omitted).

Plaintiff's present complaint fails to allege **specific acts** by **specific defendants,** and thus fails to show personal involvement for most of the defendants in the alleged violation of plaintiff's constitutional rights. In fact, the only defendants mentioned in the body of the complaint are Brady and Gumlaw.[8] Dkt. No. 1 at 5-6.

Plaintiff's complaint is not sufficient to state a claim for the violation of plaintiff's constitutional or statutory rights by the named defendants. Accordingly, plaintiff's complaint is dismissed pursuant to 28 U.S.C. §§ 1915(e). In light of plaintiff's *pro se* status, **upon payment of the full filing fee of $350.00 for this action,** the Court will allow plaintiff an opportunity to file an amended complaint. Plaintiff's amended complaint must allege specific facts demonstrating that a case or controversy exists between plaintiff and the named defendants which plaintiff has a legal right to pursue and over which this Court has jurisdiction.

**\*3** Any such amended complaint, **which shall replace in its entirety the previous complaint filed by plaintiff,** must contain a caption that clearly identifies, by name, each individual that plaintiff is suing in the present lawsuit and must bear the case number assigned to this action. The body of plaintiff's complaint must contain a short and plain statement of facts in support of plaintiff's claims, set forth in sequentially numbered paragraphs. Each paragraph shall set forth one act of misconduct or wrongdoing about which plaintiff complains, and shall include (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred and (v) the nexus between such misconduct and plaintiff's civil and/or constitutional rights.

### C. Injunctive relief

Plaintiff has requested that this Court issue a preliminary injunction against the defendants. Dkt. No. 4. However, as the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), in order to be granted a preliminary injunction, the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district Court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre,* 850 F.Supp.

143, 144 (N.D.N.Y.1994) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge that denied inmate's request for injunctive relief).

The Court has found that the complaint filed by plaintiff is insufficient and that an amended complaint must be filed for this action to proceed. Without a valid complaint, plaintiff can not possibly establish that his claim has a likelihood of success on the merits of the claim or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. Therefore, the Court denies plaintiff's motion for injunctive relief without prejudice to file a new motion after plaintiff has filed an amended complaint and it has been accepted by Order of this Court. [9]

### III. Conclusion.

Plaintiff is advised that his failure to (1) prepay the $350.00 filing fee in full **and** (2) file an amended complaint, **within thirty (30) days** of the filing date of this Decision and Order, may result in the dismissal of this action, with prejudice. *See* Fed.R.Civ.P. 41(b).

WHEREFORE, it is hereby

ORDERED, that plaintiff's application to proceed *in forma pauperis* is DENIED, and it further

ORDERED, that should plaintiff wish to proceed with this action, he **must, within thirty (30) days** of the filing date of this Decision and Order, (1) prepay the $350.00 filing fee in full **and** (2) file an amended complaint which complies with the pleading requirements of the Federal Rules of Civil Procedure and the terms of this Decision and Order, and it is further

**\*4** ORDERED, that should plaintiff fail to comply with the terms of this Decision and Order, the Clerk return the file to this Court for further consideration, including whether this action should be dismissed, with prejudice, pursuant to Rule 41(b), and it is further

ORDERED, that upon plaintiff's prepayment of the $350.00 filing fee in full **and** the filing of an amended complaint, this matter be returned to the Court for further review, and it further,

ORDERED, that plaintiff's motion for injunctive relief (Dkt. No. 4) is denied without prejudice for the reasons stated above, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 268215

### Footnotes

1   Plaintiff has filed twenty-two other civil rights actions in this District. Several of plaintiff's filings relate to the medical condition of his leg. *See Nelson v. Lee, et al.,* 9:05-CV-1096 (NAM)(DEP); *Nelson v. Roberts,* 9:06-CV-0518 (GLS)(DRH); and *Nelson v. Smith, et al.,* 9:06-CV-0477 (GLS)(GHL).

2   In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

3   Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U .S. at 327.

4   The statute provides the imminent danger exception as "a safety valve for the 'three-strikes' rules to prevent impending harms, not those harms that had already occurred."*Malik v. McGinnis,* 293 F.3d 559, 562-563 (2d Cir.2002)."The exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct."*Johnson v. Barney,* 2005 WL 2173950, \*1 (S.D.N.Y.2005).*See also, McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998) (imminent danger must be at the time plaintiff seeks to file the suit, not at the time of the alleged incidents).

5   In *Nelson v. Lee,* 9:05-CV-1096, Magistrate Judge Peebles stated that the "finding [in *Nelson v. Conway,* No. 04-CV-6163, that plaintiff had three strikes, was] entitled to preclusive effect ."*Nelson v. Lee,* No. 9:05-CV-1096, Dkt. No. 44 at 10 (citing *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288-89)).

6   In his request for injunctive relief, plaintiff indicates that the medical appointments are required to change the dressing on his lower left leg. Dkt. No. 4 at 5.

**7**     A motion by the defendants seeking revocation of plaintiff's *in forma pauperis* status and conditional dismissal of his complaint under 28 U.S.C. § 1915(g), absent plaintiff's prepayment in full of the applicable filing fee, is currently pending in *Nelson v. Nesmith. See id.* at Dkt. No. 23.

**8**     As to these defendants, plaintiff merely alleges that they are threatening to harm him if he leaves his cell for medical appointments.Dkt. No. 1 at 5-6.Words alone, however violent, are not held to amount to an assault. *Hurdle v. Ackerhalt,* No. 92-CV-1673, 1993 WL 71370, *1 (N.D.N.Y. Mar. 8, 1993) (McAvoy, D.J.) (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 n. 7 (2d Cir.1973), *cert. denied,*414 U.S. 1033 (1973)).42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse. *Alnutt v. Cleary,* 913 F.Supp. 160, 165-66 (W.D.N.Y.1996) (citations omitted). Mere allegations of threats and harassment do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983. *Hurdle,* 1993 WL 71370, *1 (citing *Morgan v. Ward,* 699 F.Supp 1025, 1055 (N.D.N.Y.1988) (Munson, J .); *Nelson v. Herdzik,* 559 F.Supp. 27 (W.D.N.Y.1983); *Williams v. Pecchio,* 543 F.Supp. 878 (W.D.N.Y.1982)).

**9**     Plaintiff must also pay the full filing fee of $350.00 as directed above.

---

**End of Document**                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw**Next** © 2015 Thomson Reuters. No claim to original U.S. Government Works.     4

2008 WL 5382353
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Elbert WELCH, Plaintiff,

v.

T. CHARLAN, et al., Defendants.

No. 9:06-CV-0061 (GTS/DEP).  |  Dec. 16, 2008.

West KeySummary

**1**  **Federal Civil Procedure**

👉  **Forma Pauperis Proceedings**

A prisoner's in forma pauperis status had to be revoked in his § 1983 action due to his violation of the three strikes provision of the Prison Litigation Reform Act in that he had filed at least three meritless civil rights complaints while confined as a state prison inmate. The prisoner failed to show that he faced imminent danger of serious physical injury to overcome the three strikes provision. The prisoner's allegations of a conspiracy to poison him referred to events that occurred well before the date on which the prisoner filed the current action. 42 U.S.C.A. §§ 1915(g), 1983.

8 Cases that cite this headnote

**Attorneys and Law Firms**

Elbert Welch, Albion, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Senta B. Siuda, Esq., Assistant Attorney General, of Counsel, Syracuse, NY, for Defendants.

***MEMORANDUM-DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

***1**  On January 9, 2006, Elbert Welch ("Plaintiff") filed this *pro se* prisoner civil rights action pursuant to 42 U.S.C. §

1983. (Dkt. No. 1, at 7 [Plf.'s Compl., dated Jan. 9, 2006].) On June 1, 2006, the Court granted Plaintiff's motion to proceed *in forma pauperis.*(Dkt. No. 12.)On September 24, 2008, United States Magistrate Judge David E. Peebles filed a Report-Recommendation that Plaintiff's *in forma pauperis* status be revoked as having been improvidently granted, based on the "Three Strikes Rule," 42 U.S.C. § 1915(g). (Dkt. No. 53.)Plaintiff has not filed any Objections to the Report-Recommendation. (*See generally* Docket Sheet.) Based on a careful review of all the papers in this action, including the Report-Recommendation of Magistrate Judge Peebles, the Court can find no error (clear or otherwise) with Magistrate Judge Peebles' Report-Recommendation. The Court would add only three points to Magistrate Judge Peebles' thorough Report-Recommendation.

First, the power of a federal district court to invoke the "Three Strikes Rule" is not limited to the outset of a litigation but extends throughout the pendency of the proceeding. In other words, a federal district court has the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted. [1]

Second, because 28 U.S.C. § 1915(g) creates an exception for prisoners who are under imminent danger of serious physical injury when they "bring a civil action," the imminent-danger exception applies only when such danger exists *at the time the action is brought. See Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002), *accord, Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at *2-3 (2d Cir. Dec.6, 2007) (declining to overturn the Second Circuit's time-of-filing interpretation set forth in *Malik* ). Here, the Court finds that, even when construed with the utmost of special solicitude, Plaintiff's Complaint does not allege facts plausibly suggesting that he was in imminent danger of serious physical injury on January 9, 2006. (*See*Dkt. No. 1 [Plf.'s Compl.].) [2]  For example, Plaintiff's allegations of a conspiracy to poison him suffer from one or more of the following three defects: (1) they refer to events that occurred well before the date on which Plaintiff brought the action on January 9, 2006 (for example, because they refer to "a massive conspiracy dating back to 1979"); (2) they are merely speculative in nature (for example, because they allege that "the swelling on [Plaintiff's] upper lip ... could well be the result of ... tainted food served by conspirators"); [3]  (3) they are so general as to be conclusory in nature; [4]  and/or (4) they

are so implausible and fantastic as to be frivolous.[5] (*Id.* at "Attachment.")

Third, when the Court originally granted Plaintiff's motion to proceed *in forma pauperis,* the Court was undoubtedly relying on Plaintiff's sworn representation in his verified Complaint that his previously litigation history in federal court consisted of merely one other federal court action. (Dkt. No. 1, ¶¶ V.A.-E. [Plf.'s Compl.].) This representation was blatantly false, given Plaintiff's extensive litigation history in federal court, which is published on the Federal Judiciary's Public Access to Court Electronics Records ("PACER") Service. This representation was also highly material, given Plaintiff's accumulation of strikes during the course of that ligation history. As a result, an alternative ground for revoking Plaintiff's *in forma pauperis* status is that he should be sanctioned for making a material misrepresentation to the Court.[6]

**\*2** For all of these, the Court adopts the Report-Recommendation of Magistrate Judge Peebles.

Finally, a few words are necessary about Plaintiff's litigation history in this Court. The Court is fully aware of the special solicitude that Plaintiff should be afforded as a *pro se* civil rights litigant. However, the Court is also aware of the abusive nature of Plaintiff's litigation history in this Court, and that litigation history's impact on the resources of this Court (and the speed with which the Court has been able to decide the civil rights claims of other *pro se* prisoners). For example, Plaintiff's litigation history in this Court has included the filing of sixteen (16) other prisoner cases since 1996. Each of these cases sixteen other cases has been transferred or dismissed (often based on failure to state a claim or frivolousness),[7] except for one case (in which Plaintiff has been required to file an Amended Petition, which properly states a habeas corpus claim, by December 19, 2008, upon penalty of dismissal).[8] In addition, in some of these sixteen cases, Plaintiff has attempted to relitigate claims (e.g., his food-poisoning conspiracy claim) that had been previously decided and/or dismissed with prejudice.[9] Moreover, in some of the sixteen cases, Plaintiff has attempted to circumvent the "Three Strikes Rule" by either misrepresenting his litigation history in his sworn Complaints, or casting his prisoner civil rights claims as habeas corpus claims.[10] Finally, in several of the sixteen cases, Plaintiff (who is currently incarcerated in the Western District of New York) has intentionally misfiled his Complaints in this Court instead of in the Western District

of New York, because he believes the judges of that District are engaged in a massive conspiracy against him.[11]

*For these reasons, Plaintiff is cautioned that, if he continues his pattern of abusive litigation in this Court, he will be subject to an Order preventing him from filing future actions in this Court without either (1) being represented by counsel or (2) obtaining prior leave of the Court.* The Court notes that Plaintiff has already received a similar bar order from the Second Circuit. *See Welch v. Phelps,* No. 03-0045, Order (2d Cir. filed Oct. 7, 2003).

**ACCORDINGLY,** it is

**ORDERED** that United States Magistrate Judge David E. Peebles' Report-Recommendation (Dkt. No. 53) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's *in forma pauperis* status is **REVOKED** as having been improvidently granted; and it is further

**ORDERED** that, if Plaintiff has not paid the Court's prior filing fee of two hundred fifty dollars ($250) within thirty (30) days of the date of this Memorandum-Decision and Order, his Complaint (Dkt. No. 1) shall be **DISMISSED** without further Order of this Court; and it is further

**ORDERED** that the parties' cross-motions for summary judgment (Dkt.Nos.42, 43) are **DENIED** as moot without prejudice to renewal if Plaintiff pays the required filing fee within the prescribed period; and it is further

**\*3 ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties and Magistrate Judge Peebles.

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Elbert Welch, a prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this civil rights action pursuant to 42 U.S.C. § 1983 against various defendants, including the Commissioner of the New York Department of Correctional Services ("DOCS") and other high ranking public officials, alleging the existence of constitutional deprivations as well as violations of state laws

and regulations. Welch, a frequent litigator, has commenced many actions in this and other courts most of which center upon his contention that DOCS officials, acting in concert with federal officials, including the Director of the Federal Bureau of Investigation ("FBI"), with the assistance of television networks, broadcasters and sports figures, have conspired for many years to have him murdered. In this instance Welch complains principally of disciplinary confinement arising out of the issuance of two separate misbehavior reports, one involving an incident which occurred in the prison cafeteria, and the other based upon items confiscated during a search of his cell. In his complaint plaintiff seeks recovery of $44 million in compensatory and punitive damages as well as temporary injunctive relief and an order that those involved in the actions against him be subjected to criminal prosecution.

Now that pretrial discovery has been completed, the defendants have moved seeking the entry of summary judgment dismissing plaintiff's complaint, both on the merits and based upon their claim of entitlement to qualified immunity. Plaintiff has since cross-moved for summary judgment in his favor, as well as for leave to amend his complaint to identify an additional defendant previously sued only as "Tier Review Officer, Lt. John Doe, Clinton C.F. Annex." In reviewing the parties' cross-motions and in light of events which have occurred since the filing of those motions, I find that the granting of *in forma pauperis* ("IFP") status to the plaintiff was improvident, and therefore recommend that it be vacated, *sua sponte,* and that the action be dismissed unless plaintiff prepays the requisite filing fee.

## I. BACKGROUND

Plaintiff is a New York State prison inmate entrusted to the custody of the DOCS; at the times relevant to his constitutional claims plaintiff was designated to the Clinton Correctional Facility ("Clinton") Annex, into which he was transferred sometime in 2005 from the main portion of the facility. *See* Plaintiff's Complaint (Dkt. No. 1) at p. 6, ¶ 6.

Although plaintiff's claims are prefaced by his allegation that he has been subject since 1979 to an ongoing "massive conspiracy" to kidnap and kill him, *see generally* Plaintiff's Complaint (Dkt. No. 1), a contention advanced by Welch in many other of his cases, at the heart of plaintiff's complaint in this matter is disciplinary action taken against him as a result of two separate incidents both of which took place on January 8, 2006. The first of those occurred in the cafeteria at Clinton when a dispute arose over a piece of chicken which

a worker attempted to serve him. Complaint (Dkt. No. 1) at p. 4, ¶ 1; *see also* Defendants' Motion (Dkt. No. 42-4) Exh. B. Plaintiff insisted that the chicken which he was originally to have been given was "deliberately dropped" by the server in order that he might be provided with a substitute piece of tainted chicken which had been "set aside deliberately" for him. Complaint (Dkt. No. 1) at p. 4, ¶ 1. Plaintiff refused to accept the chicken and allegedly began to argue with and swear at the server, who refused to provide him with another piece of meat. Defendants' Motion (Dkt. No. 42-4) Exh. B at p. 25.

**\*4** Plaintiff was ultimately directed by Corrections Officer T. Charlan to take the chicken, since he was holding up the dinner line. *Id.* When plaintiff refused that request, defendant Charlan then ordered the plaintiff to take the chicken and keep moving, at which point plaintiff complied. *Id.* Plaintiff's continued use of foul language, however, directed at both the server and Charlan, resulted in his being removed from the mess hall and issued a misbehavior report accusing him of several violations including creating a disturbance, harassment, refusing a direct order, and mess hall and seating violations. *Id.; see also* Defendants' Motion (Dkt. No. 42-4) Exh. D at pp. 137-39.

Shortly after the cafeteria incident Corrections Officer R. Lincoln received a call from another prison official directing him to pack up Welch's property from his cell. Defendants' Motion (Dkt. No. 42-4) Exh. D at p. 110. In the course of packing up plaintiff's property Officer Lincoln discovered prohibited materials, including an electric razor with a one and one-half inch blade, a money receipt belonging to another inmate, and papers containing another inmate's docket and case numbers. *Id.; see also* Defendants' Motion (Dkt. No. 42-4) Exh. C. The prohibited items were confiscated and plaintiff was issued a second misbehavior report, charging him with possession of contraband, possession of another inmate's legal papers, and the rendering of unauthorized legal assistance. *Id.*

Following consolidation of the two misbehavior reports, a Tier III disciplinary hearing was held, beginning on January 17, 2006, to address the two reports. [1] Defendants' Motion (Dkt. No. 42-4) Exh. D. At the close of that hearing plaintiff was found guilty of all charges against him, resulting in the imposition of a penalty which included six months of disciplinary confinement in the facility's special housing unit ("SHU"), with a corresponding loss of recreation, package, commissary and telephone privileges, together

with an additional recommendation that plaintiff lose three months of good time credits. *Id.* at pp. 137-38.That penalty was subsequently reduced, on administrative appeal, to two months of SHU confinement with a corresponding loss of privileges, with a recommendation the plaintiff forfeit two months of good time credits. Defendants' Motion (Dkt. No. 42-4) Exh. E.

While addressing the two discrete events both occurring on the same date, plaintiff's claims in this action represent an extension of those which have been asserted by him in the many prior actions commenced in this and other courts, alleging the existence of a widespread conspiracy to cause him harm. [2] Typical of plaintiff's allegations regarding this vast conspiracy are his claims that:

(1) Codes have been adopted by a seemingly endless network of DOCS employees, other inmates, and other conspirators, including the term "tapioca" in reference to the alleged wiretapping of the telephone in plaintiff's former home by a judge in 1980, and references to the numbers "25, 5, 8, [and] 8-track" which he claims represent "abbreviated ways of making statements concerning [his] former ... residence ... and the plot to track or trace the whereabouts of [his] son [then 8 years old] through school records."Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 43-4) ¶ 100.

**\*5** (2) Countless adverse actions have been taken against the plaintiff in prison, including the incident reports at issue, as acts of retaliation for plaintiff's alleged service as an FBI witness in 1979.*See generally* Plaintiff's Complaint (Dkt. No. 1); Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 43-4).

(3) On numerous occasions "[c]onspirators ... sought to contaminate [plaintiff] through unsuccessful attempts to engage [him] in sexual conduct with [male and female DOCS employees] or homosexual conduct with inmates."Plaintiff's Local Rule 7.1(a) (3) Statement (Dkt. No. 43-4) ¶¶ 17-18.

(4) DOCS employees and other inmates have contaminated the plaintiff's food with "bleach and other foreign substances," *see, e.g.,* Plaintiff's Complaint (Dkt. No. 1) at Sec. III, "Injuries," and, he is in imminent danger of death due to such poisoned foods. *See, e.g.,* Plaintiff's Complaint (Dkt. No. 1), at p. 11, ¶ 22. Additionally, to date, plaintiff has contracted "granuloma" in his lungs and hepatitis C as a result of food contamination. Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 43-4) ¶¶ 25-29; Plaintiff's Medical Records (Dkt. No. 48) at pp. 2-5.

(5) This conspiracy is also discriminatory in nature and "white inmate[s have been used] to harass and set [plaintiff] up ... to consummate the conspiracy."Plaintiff's Complaint (Dkt. No. 1) at p. 11, ¶ 26.

(6) Conspirators have adopted the phrase " 'give it back' ... to convey their intent to somehow get the money back that they anticipate [plaintiff] will recover from this conspiracy as damages in lawsuits."Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 43-4) ¶ 101.

(7) Several of plaintiff's family members have been killed by conspirators "pursuant to the goals of this conspiracy."*Id.* at ¶¶ 75-76.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on January 17, 2006. Dkt. No. 1. As defendants, plaintiff's complaint names former DOCS Commissioner Glenn S. Goord; Clinton Superintendent Dale Artus; Corrections Officers T. Charlan and R. Lincoln; Corrections Captain Brown; and a John Doe defendant, as well as two other federal officials including Alberto Gonzales (incorrectly identified as "Gonzalez"), the former United States Attorney General; and Robert S. Mueller, former Director of the FBI. [3] In his complaint plaintiff alleges a host of constitutional violations, claiming the issuance of allegedly false misbehavior reports, an unreasonable search and seizure of his cell and corresponding seizure of property in violation of the Fourth Amendment, and the denial of procedural due process. *See generally* Complaint (Dkt. No. 1). Upon review of plaintiff's complaint and supporting application, his request for IFP status was granted by order issued on June 1, 2006 by Senior District Judge Lawrence E. Kahn. Dkt. No. 12.

On February 29, 2008 the defendants appearing in the action moved for summary judgment seeking dismissal of plaintiff's claims on a variety of bases, including, *inter alia,* qualified immunity. Dkt. No. 42.Plaintiff has since cross-moved for summary judgment in his favor, both on the issue of liability and with respect to damages, and further seeks to name Lieutenant Sawyer, who according to him "was the review officer who determined the [tier] level of the disciplinary hearing" against him, in the place of the defendant previously

identified only as a "John Doe".Dkt. No. 43.Defendants have since responded in opposition to plaintiff's cross-motion, alleging it to be without merit. Dkt. No. 46.

**\*6** The parties' cross-motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).See alsoFed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *PLRA Three Strikes Rule*
In light of multiple prior findings that this particular plaintiff is precluded by 28 U.S.C. § 1915(g) from proceeding *in forma pauperis,* given his history of frivolous litigation, and the intervening events which are recounted below, I have reviewed the question of whether plaintiff qualifies for IFP status, despite the fact that the issue has not been raised by the defendants.

#### 1. *Three Strikes Provision Generally*
Section 1915(g), which was enacted as part of sweeping inmate litigation reform brought about by adoption of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), though engendering far less litigation than some of its PLRA counterparts including, notably, the exhaustion of remedies requirement of 42 U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); *see also Polanco v. Hopkins,* 510 F.3d 152, 153-54 n. 1 (2d Cir.2007). The manifest intent of Congress enacting this "three strikes" provision was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443-44 (2d Cir.2007); *Gill v. Pidlypchak,* No. 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J. & Treece, M.J.). The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has had three previous strikes to engage in a cost-benefit analysis in some ways similar to that which other civil litigants must make before deciding whether to commence suit, accompanied by the filing of the full fee-that is, to assess whether the result to be achieved justifies the filing fee expenditure in advance, rather than in installments. *See Ibrahim v. District of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006). As the Second Circuit has noted, in the context of PLRA amendments requiring inmates to authorize prison officials to make deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted *in forma pauperis* status,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to file suit at taxpayers' expense.

**\*7** *Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997), *cert. denied sub nom., Nicholas v. Miller,* 523 U.S. 1126, 118 S.Ct. 1812, 140 L.Ed.2d 950 (1998) (citations omitted); *see also Gill,* 2006 WL 3751340, at *2.

The question of whether the dismissal of a prior action qualifies as a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such question for the court. [4] *Tafari,* 473 F.3d at 3d at 442-43. In determining whether a dismissal satisfies the failure to state a claim prong of the statute, implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions. *Tafari,* 473 F.3d at 442 (citing *Andrews v. King,* 398 F.3d 1113, 1121 (9th Cir.2005))

#### 2. *Application of Section 1915(g)*

Without question, plaintiff Welch is subject to the three strikes provision of section 1915(g), and the court need not linger long in addressing this issue. On March 16, 2000, well before the filing of this suit, the question was examined by the Second Circuit Court of Appeals in a decision affirming Senior District Judge Thomas J. McAvoy's dismissal of a complaint in a similar action brought by Welch. [5] *See Welch v. Galie,* 207 F.3d 130, 131-32 (2d Cir.2000) (affirming *Welch v. Galie,* No. 97-CV-1369, Dkt. Nos. 119, 131 (N.D.N.Y.) (TJM/DRH)); *see also Welch v. Fisher,* No. 07-CV-929, Dkt. No. 8 at 2-3 (N.D.N.Y.) (TJM/DEP) (acknowledging that plaintiff earned three strikes status seven years ago as determined in *Welch v. Galie); Welch v. Selsky,* No. 06-CV-812, Dkt. Nos. 49, 51 (N.D.N.Y.) (TJM/DEP) (same). That finding is entitled to preclusive effect in this action, *see Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288-89 (2d Cir.2002), thus eliminating defendants' need to independently establish the existence of three strikes for purposes of this action.

Based upon my finding that plaintiff has filed at least three meritless civil rights complaints while confined as a New York State prison inmate, absent applicability of the imminent danger exception set out in the relevant statute, he is subject to the provisions of 28 U.S.C. § 1915(g) and may properly be required to prepay in full the applicable filing fee in order to pursue his claims in this matter notwithstanding that IFP status was previously conferred. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247-48 (E.D.N.Y.1998).

**3.** *Imminent Danger Exception*
As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule of section 1915(g).*See*28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes provision on the basis of past harm. *Malik,* 293 F.3d at 562-63. An inmate who claims the benefit of this exception must also show that the danger faced rises to the level of a "serious physical injury." 28 U.S.C. § 1915(g). The imminent danger an inmate faces, moreover, must be real, and not merely speculative or hypothetical. *Johnson v. Barney,* No. 04 Civ. 10204, 2005 WL 2173950, at *1-2 (S.D.N.Y. Sept.6, 2005)

(finding that inmate's allegation of danger at the facility in which he was not housed but though which he may pass on infrequent occasions in the future, did not (establish imminent danger).

**\*8** The term "serious physical injury", as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death [.]"*Ibrahim,* 463 F.3d at 7. In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney,* 281 F.3d 709, 710 (8th Cir.2002). Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin,* 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim,* 463 F.3d at 6-7; and heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini,* 352 F.3d 328, 330-31 (7th Cir.2003) (finding upon reaching the merits, however, that plaintiff's complaint did not state an Eighth Amendment claim).

Plaintiff's claims in this action stem chiefly from his belief that he was improperly punished for an incident which occurred in the prison mess hall, and later based upon items seized from his cell. Standing alone, such matters do not implicate the existence of imminent danger of serious physical injury, since they relate to discrete incidents which occurred in the past, with no lingering risk of harm. *See Abdul-Akbar v. McKelvie,* 239 F.3d 307, 315 (3d Cir.2001) ("By using the term 'imminent', Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."); *McFadden,* 16 F.Supp.2d at 247 (noting that imminent danger must occur at the time the plaintiff seeks to file the suit, and not at the time of the alleged incidents).

It is true that plaintiff's complaint makes accusations regarding efforts by prison officials to poison his food, alleging the following:

> I have received information from several inmates that they are aware of a conspiracy to kill me. I have been informed both directly and by words and conduct which I understand, that my food has been tainted on numerous occasions both

> while being served on the line and while in cell confinement such as my present cell confinement. Inmates and DOCS employees use codes and signs which often involve placing hand or fingers on upper lip or pointing to nose which is intended to refer to the conspiracy to poison by tainted food. I currently have swelling on my upper lip which could well be the result of such tainted food served by conspirators.

Complaint (Dkt. No. 1) at p. 7, ¶ 8. Such allegations on the part of Welch, however, are by no means new to the scene. Indeed, similar allegations were rejected by Senior District Judge Thomas J. McAvoy in his decision dated October 30, 2007, denying IFP status to Welch, the court noting that "[p]laintiff's claim of food poisoning is also wholly unsupported" and adding that allegations similar to those contained in plaintiff's complaint in this action regarding comments and gestures "are patently insufficient to state a claim for relief."*Welch v. Fisher,* No. 07-CV-929 (TJM/ DEP), Dkt. No. 8 at p. 4 and n. 7 (N.D.N.Y.2007); *see also Welch v. Samuels,* No. 02-CV-1077 (TJM/GLS), Dkt. No. 9 at p. 3 (N.D.N.Y.2002) (finding that Welch's allegations that he is the target of a conspiracy by DOCS employees to kill him were similar to claims raised in previously filed suits dismissed as "patently frivolous" and did not establish the existence of imminent danger). Consequently, while this court did initially invoke the imminent danger of serious physical injury exception when granting IFP status in this case in June of 2006, closer review of plaintiff's allegations, considered in light of subsequent events, convince me that IFP status was improvidently granted, and should be rescinded. [6]

## IV. *SUMMARY AND RECOMMENDATION*

**\*9** The plaintiff, an experienced litigator with a history of commencing actions in this and other courts based upon wild and fantastic allegations the vast majority of which have been found to be patently meritless, is subject to the three strikes provision of the PLRA which, absent a finding of imminent danger of serious physical injury, warrants denial of IFP status and the requirement that to proceed with this action he must prepay the requisite filing fee. Having reviewed the record and found no basis to conclude that plaintiff is in fact exposed to imminent danger of serious physical injury, like other judicial officers who have reviewed allegations by the plaintiff similar to those now raised and his circumstances as a DOCS inmate, I find he does not qualify to proceed *in forma pauperis,* and therefore recommend that the IFP status previously granted in this case be rescinded. Accordingly, it is hereby

RECOMMENDED that the order granting plaintiff IFP status (Dkt. No. 12) be VACATED in relevant part, that plaintiff's complaint (Dkt. No. 1) be DISMISSED as to all defendants and all claims unless Welch pays the requiring filing fee of $350.00 in full within thirty days after the entry of a final order by the district judge addressing this recommendation, and that the parties' cross-motions for summary judgment (Dkt.Nos.42, 43) be DENIED as moot, without prejudice to renewal if this report is rejected, or plaintiff pays the requisite filing fee within the prescribed period.

NOTICE: pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation. Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Not Reported in F.Supp.2d, 2008 WL 5382353

## Footnotes

1   *Johnson v. Connolly,* 07-CV-0158, 2008 WL 724167, at *7, n. 15 (N.D.N.Y. March 17, 2008) (Kahn, J., adopting Report-Recommendation on *de novo* review) [collecting cases].

2   "When determining whether a prisoner has qualified for the 'imminent danger' exception, courts look at the non-conclusory allegations in the plaintiff's complaint."*Johnson,* 2008 WL 724167, at *9, n. 18 [collecting cases]; *see also Welch v. Fisher,* 07-CV-0929, 2007 WL 3231992, at *1-2 (N.D.N.Y. Oct.30, 2007) (McAvoy, J.).

3    *See, e.g., Skillern v. Paul,* 06-CV-11440, 202 F. App'x 343, 344 (11th Cir. Oct.4, 2006) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where it alleged merely that the deprivation of his heart medication "may result" in his suffering serious physical injury, without "present[ing] any description of the condition giving rise to the prescription for heart disease medication," and without "alleg[ing] that he suffered any physical injury as a result of not receiving the medication"); *Swenson v. Pramstaller,* 169 F. App'x. 449, 450-51 (6th Cir.2006) (concern of imminent danger due to sleepwalking in prison was speculative).

4    *See, e.g., Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he merely asserted conclusory allegations that prison officials were trying to kill him by forcing him to work in extreme weather conditions despite "his blood pressure condition").

5    *Gibbs v. Case,* 160 F.3d 962, 967 (3d Cir.1998) ("[A] a district court [need not] accept any and all allegations of injury as sufficient to forestall application of 28 U.S.C. § 1915(g).... [A] district court [may] discredit[ ] factual claims of imminent danger that are 'clearly baseless,' i.e., allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.' ") [citation omitted]; *see, e.g., Moore v. Robert,* 06-CV-11911, 2006 WL 2925303, at *1 (E.D.Mich. Oct.11, 2006) (allegation that computer microchip had been implanted in brain did not allege imminent danger of serious physical injury); *Brooks v. Barrow,* 06-CV-0499, 2006 WL 1718337, at *1, n. 2 (M.D.Ala. June 19, 2006) (allegation that prison staff had engaged in the "mass murder" of inmates to "sell body parts" and "torture inmates").

6    District Judges from this Court have indicated a willingness to sanction *pro se* litigants for making such misrepresentations. *See, e.g., Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases]. Certainly, other federal courts have so sanctioned *pro se* litigants. *Chavis v. Ryan,* 05-CV-0100, 2008 WL 4934605, at *8, n. 8 (N.D.N.Y. Nov. 18, 2008) [citing cases].

7    *See, e.g., Welch. Fisher,* 07-CV-0929, Order, at 5 (N.D.N.Y. filed Oct. 30, 2007) (McAvoy, J.); *Welch v. LeFevre,* 96-CV-0789, Order of Dismissal (N.D.N.Y. filed July 31, 1996) (Scullin, J.).

8    *See Welch v. Mukasey,* 09-CV-1217, Decision and Order (N.D.N.Y. filed Nov. 19, 2008) (Hurd, J.).

9    *See, e.g., Welch v. Mukasey,* 09-CV-1217, Decision and Order, at 3, n. 1 (N.D.N.Y. filed Nov. 19, 2008) (Hurd, J.). (*See also*Dkt. No. 53, at 17.)

10   *See, e.g., Welch v. Mukasey,* 09-CV-1217, Decision and Order, at 5, n. 3 (N.D.N.Y. filed Nov. 19, 2008) (Hurd, J.)

11   *See, e.g., Welch v. Mukasey,* 08-CV-1217, Decision and Order (N.D.N.Y. filed Nov. 19, 2008) (Hurd, J.); *Welch v. Fischer,* 08-CV-1056, Order of Transfer (N.D.N.Y. filed Oct. 10, 2008) (Mordue, C.J.); *Welch v. Brown,* 08-CV-1055, Order of Transfer (N.D.N.Y. filed Oct. 9, 2008) (Scullin, J.); *Welch v. Oldenburg,* 07-CV-0973, Order of Transfer (N.D.N.Y. Dec. 10, 2007) (Homer, M.J.); *Welch v. Artus,* 05-CV-0712, Order of Transfer (N.D.N.Y. filed March 3, 2006) (McAvoy, J.); *Welch v. United States Dep't of Justice,* 02-CV-0902, Order of Transfer (N.D.N.Y. filed Sept. 25, 2002) (Kahn, J.); *Welch v. Reynolds,* 98-CV-1069, Order of Transfer (N.D.N.Y. filed Sept. 25, 1998) (Sharpe, J.)

1    The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,*525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998).

2    A search of relevant court records reveals that dating back to 1996, plaintiff has commenced a total of fourteen actions in this court, and six more in the Western District of New York, as a prison inmate complaining of prison conditions.

3    Plaintiff's claims against defendants Gonzales and Mueller were dismissed by the court, *sua sponte,* on June 1, 2006. *See*Dkt. No. 12.

4    The Second Circuit has expressed its view that the time for determination of "strikes" is only when the section 1915(g) issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that section.*DeLeon v. Doe,* 361 F.3d 93, 95 (2d Cir.2004); *see also Snider v. Melindez,* 199 F.3d 108, 115 (2d Cir.1999) ("We ... doubt whether the entry of a strike is properly considered at the time an action is dismissed.").

5    In that decision, the Second Circuit went so far as to determine that one of those dismissals, which occurred before the enactment of section 1915(g), nonetheless constituted a "strike" under the statute. *Galie,* 207 F.3d at 132.

6    A recent submission by the plaintiff, filed on May 23, 2008, gives me slight room for pause. Dkt. No. 48. In that submission plaintiff includes results of a January 18, 1999 x-ray revealing clear lung fields, and a subsequent report from October of 2007 revealing the existence of "tiny calcified granulomas in each lung." *Id.* I recommend rejection of this x-ray result as surpassing the threshold of demonstrating imminent danger of serious physical injury, however, in light of the fact that the report goes on to state that "[t]hese tiny calcified granulomas are present on today's exam and are of no clinical significance." *Id.*

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.